IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | | |
|---|---|---|
| SECURE SIGNAL, INC., a Florida corporation, and NATIONAL SATELLITE SPORTS, INC., a Florida corporation, | : : : : | Case No. |
| Plaintiff, | : : : | |
| -against- | : : : | |
| THE LONSTEIN LAW OFFICE, P.C., A New York professional corporation; SIGNAL AUDITING, INC., a New York corporation; WAYNE LONSTEIN, Esq., an individual and citizen of the state of New York; JULIE LONSTEIN, an individual and citizen of the state of New York and the wife of Wayne Lonstein, Esq.; HERBERT LONSTEIN, an individual and citizen of the state of New York; JULIE LONSTEIN, Esq., an individual and citizen of the state of New York and the wife of Herbert Lonstein; STEVE LEVINE, an individual and citizen of  the state of New York; APRIL DRAGANCHUK, an individual and citizen of the state of New York; MARTHA DYMOND, an individual and citizen of the state of New York; and JOHN and JANE DOES, being unknown attorneys who are citizens of the state of New York employed, or formerly employed, by the Lonstein Law Office, P.C., | : : : : : : : : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

## **COMPLAINT**

COMES NOW Secure Signal, Inc. ("SSI") and National Satellite Sports, Inc.

("NSS"), both corporations organized under the laws of the state of Florida and being in

good standing therein, and file this Complaint naming as Defendants: The Lonstein Law Office, P.C. ("The Lonstein Firm"), Signal Auditing, Inc. ( "SAI"), Wayne Lonstein, Esq. ("Wayne Lonstein"), Julie Lonstein ("Julie Lonstein I"), Herbert Lonstein ("H. Lonstein") , Julie Lonstein, Esq. ("Julie Lonstein II"), Steve Levine, Erin Levine, April Draganchuk, Martha Dymond, and John and Jane Does, and shows this Honorable Court as follows:

### Jurisdiction and Venue

1.     This Complaint sets forth a dispute with complete diversity of citizenship between the Plaintiffs and the collective Defendants, and with an amount in controversy in excess of $75,000. Consequently, jurisdiction in this Court is proper under 28 U.S.C. § 1332.

2.     As a case sitting in federal court by virtue of diversity of citizenship, the Court should apply the substantive laws of the state of New York.

3.     The Lonstein Firm is a New York professional corporation with its principal place of business being within Ulster County, New York.

4.     SAI is a New York corporation with its principal place of business being within Ulster County, New York.

5.     Wayne Lonstein, Esq. is a citizen of New York, who resides and/or transacts business in Ulster County, New York.

6.     Julie Lonstein I is a citizen of New York who  resides in Ulster County, New York.

7.     Herbert Lonstein is a citizen of New York who resides in Ulster County, New York.

8.     Julie Lonstein II is a citizen of New York who resides and/or transacts business in Ulster County, New York.

9.     Steve Levine is a citizen of New York who resides and/or transacts business in Ulster County, New York.

10.    Erin Levine is a citizen of New York who resides in Ulster County, New York.

11.    April Draganchuk is a citizen of New York who resides and/or transacts business in Ulster County, New York.

12.    Ms. Martha Dymond is a citizen of New York who resides and/or transacts business in Ulster County, New York.

13.    John and Jane Does are various attorneys who have been employed by the Lonstein Firm, and are citizens of New York who reside and/or transact business in Ulster County, New York.

14.    The Defendants named in this Complaint all are citizens of New York or reside or transact business within Ulster County, which is located in the Albany Division of the United States District Court for the Northern District of New York. Consequently, venue in this Court is proper pursuant to 28 U.S.C. § 1391.

15.    Jurisdiction is proper as to all the Defendants.

**Facts**

**The Legal Relationship Between The Plaintiffs
and The Lonstein Firm, et. al. is Created**

16.    SSI and NSS are Florida corporations which have as their principal place of business Palm Beach County, Florida.

17.    At all times relevant to the Instant Complaint, the principal business operations of NSS were the acquisition, marketing, licensing and distribution of certain pay per view programming to commercial entities, such as bars, taverns, restaurants, racetracks and

casinos. The programming licensed to clients of NSS was delivered to the clients for purposes of public display (using televisions or monitors), with the technical means of conveying programming being by either satellite or cable transmissions.

18.     Pursuant to the various agreements under which NSS acquired its rights to market and license commercial pay per view programming, NSS had the authority and legal standing to identify ("Police", or "Police the Signal") and prosecute commercial establishments which unlawfully intercepted and broadcast for public display pay per view programming (the "Events"). It was essential for NSS to Police the Signal of Events in order that NSS could protect the rights in the intellectual property it had acquired.

19.     Pursuant to the standard and overall business operations of NSS, as well as those of similarly situated businesses, NSS has been compelled to retain the representation of companies which Police pay per view Events. These companies retain auditors who, during the live broadcast of an Event, identify commercial establishments which are unlawfully broadcasting the Events ("Pirates" or "Infringers"). The Pirates are identified by the auditors, who prepare sworn affidavits attesting to the relevant facts (e.g., the name and address of the establishment, the time the auditor was present, the number of patrons present, the number of televisions and monitors displaying the Event, distinguishing characteristics of the commercial establishment, etc.).

20.     At all times relevant to this Complaint, SSI was engaged in the business of representing companies ("Licensors") such as NSS in Policing signals of pay per view Events. During the period of time from 1994 through 2002, SSI was the premier entity engaged in the business of Policing pay per view Events in order to identify unlawful interception and broadcasts of Events by commercial establishments ("Piracy"). SSI

had developed a sophisticated and successful business plan and set of standardized procedures ("Auditing Services"), and using its sophisticated set of operations and procedures which SSI had developed from its inception, SSI was able to re-capture millions of dollars in lost revenues for Licensor clients such as NSS.

21.    Pursuant to the business operations of SSI, its agreements with Licensors have historically permitted SSI to retain legal counsel and law firms to prosecute claims for Piracy against Infringers identified by SSI.

22.    The claims filed by counsel retained by SSI to represent SSI and the Licensors are brought in the name of the Licensor under 47 U.S.C. §§ 553 and/or 605 of the Federal Communications Act (47 U.S.C.A.- the "Act").

23.    In 1999, the Defendants The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II began to aggressively market their legal services to SSI and NSS.  Wayne Lonstein and Julie Lonstein II traveled to SSI's and NSS's offices in Boca Raton, Florida, where they were introduced by Alan Gelb ("Gelb"), an attorney with law offices with offices in New Jersey who was known to SSI and NSS for specializing in the prosecution of violators of the Federal Communications Act (see, Joe Hand Promotions v. Sports Page Café, 940 F. Supp. 102 (D.N.J. 1996)).  At the first meeting in Boca Raton where Wayne Lonstein was present, Wayne Lonstein was specifically introduced by Mr. Gelb as being Gelb's law partner in the practice of prosecuting Piracy claims.

24.    The Lonstein Firm, Wayne Lonstein, Julie Lonstein II, and Gelb aggressively marketed their legal services to SSI and NSS, representing that they could provide legal representation in jurisdictions throughout the entire United States.  These same parties also represented that they could provide legal representation throughout the United

States regarding other Licensor-clients for whom SSI provided Auditing Services, such as Entertainment By J & J, Inc. ("EJJ"); Garden City Boxing Club, Inc. ("GCB"); Top Rank, Inc. ("TR") and Kingvision Pay Per View Ltd. ("KV").

25.     As a result of these aggressive marketing efforts, NSS and SSI eventually retained The Lonstein Firm, Wayne Lonstein, Julie Lonstein II, as well as Gelb as legal counsel to pursue various Piracy claims.  The scope of these Defendants' legal services were to include not just representation of NSS and SSI, but representation in actions brought against Infringers on behalf of Licensor-clients of SSI other than NSS.  All legal representation was to be on a contingency basis.

26.     Pursuant to relevant retainer agreements between SSI and Licensor-clients of SSI, SSI was entitled to recover a portion of any proceeds obtained in a lawsuit based upon Infringers identified by SSI.  Therefore, SSI had a legal, equitable and financial interest in any claim brought by The Lonstein Firm and its attorneys pursuant to matters (the "Legal Matters") received by the Lonstein Firm for the initiation of litigation.

27.     From the outset of the legal relationship between SSI and The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II, the latter were all well-aware of SSI's legal, equitable and financial interest in any claim brought by The Lonstein Firm and its attorneys pursuant to the Legal Matters.

### Transmission of the Legal Matters, and SSI's
### Documentation, to The Lonstein Firm

28.     In transmitting approximately eight hundred (800) Legal Matters to The Lonstein Firm, SSI and NSS provided certain standard and essential documentation.  Amongst the standard and essential documentation accompanying each of the Legal Matters

were sworn affidavits and often "check lists" prepared by auditors who were working at the direction of SSI. These affidavit forms and check-lists had been developed and perfected by SSI throughout its years of experience in Policing Events. Based on the auditors' sworn affidavits, The Lonstein Firm and its attorneys were able to bring actions under 47 U.S.C.A. §§ 553 and/or 605, as well as, intermittently, under various state law claims.

29.    Insofar as The Lonstein Firm and its attorneys were acting as counsel for SSI and NSS, and thus had an attorney-client relationship with both SSI and NSS, SSI was comfortable in providing The Lonstein Firm and its attorneys not only with the information set forth in paragraph twenty-eight, but with a wide variety of SSI's proprietary information.   Based on its reliance on the protections and confidentiality provided by the attorney-client relationship, SSI divulged to The Lonstein Firm and its attorneys (and personnel) all of SSI's proprietary information and techniques regarding the business operations of SSI.   Given that SSI was the leading company in North America in identifying commercial Infringers and then supervising prosecution of claims under the Act, using procedures and techniques developed, honed and perfected over a long period of time, SSI provided a great deal of valuable information of an extremely confidential nature.

30.    The auditors who provided sworn affidavits were integral to the business operations of SSI.  This fact was well-known to The Lonstein Firm, its attorneys, and its personnel.  Relationships with auditors were developed over many years, and most auditors were regularly utilized by SSI several times each year.  Without the ability to

access the services of the auditors it had identified and then built-up business and personal relationships, SSI's business operations would be severely impacted.

31.     When the Lonstein Law Firm and its attorneys prosecuted the Legal Matters forwarded from SSI, it necessarily contacted the auditors who had supplied the sworn affidavits and/or check-lists to be witnesses in discovery, in the event of a trial, or for any necessary affidavits. Having the relationship of an attorney and a client, SSI and the Lonstein Firm (as well as the firm's attorneys and personnel) were in a fiduciary relationship, and SSI entrusted the Lonstein Law Firm, the firm's attorneys, and the firm's office personnel, with acting in good faith, and with the highest level of professional propriety in communicating with auditors who were absolutely essential to SSI's business operations.

32.     Upon information and belief, the parties who communicated with SSI's auditors included Wayne Lonstein, Julie Lonstein II, Steve Levine, April Draganchuk, and Martha Dymond. In addition, other attorneys (John Does and Jane Does) who were from time to time employed by the Lonstein Law Firm, contacted SSI's auditors.

33.     Unknown to SSI, many or all of the named Defendants, including Julie Lonstein, Herbert Lonstein, and Steve Levine, had commenced operation of an entity known as Signal Auditing, Inc.  Upon information and belief, SAI was a company designed to deliberately duplicate the business operations of SSI, utilizing the business practices the Defendants had observed from SSI's activities and proprietary and confidential documentation.

34.     Again unknown to SSI, many or all of the Defendants were using confidential information divulged by SSI to set up, design, operate, and maintain SAI's business

operations. For example, SAI utilized the information provided by SSI's auditors on known Infringers from prior Events to identify commercial establishments which were likely to "pirate" closed circuit programming in future pay per view Events.  On the evenings of Events, SAI would direct its auditors to the commercial establishments it learned of from the SSI documentation forwarded as part of the Legal Matters in anticipation of identifying the commercial establishment as a Pirate.

35.     In addition, and despite the fiduciary relationship between SSI and the Lonstein Firm, its principals, attorneys, and office personnel, Steve Levine, Wayne Lonstein, Julie Lonstein II, April Draganchuk, Martha Dymond and others recruited SSI's auditors to provide professional services for SAI, instead of the auditors working for SSI. That is, the Defendants utilized the confidential information given to the Lonstein Firm with the Legal Matters to identify, contact, and persuade auditors to provide services to SAI, rather than to SSI.

36.     The actions taken by the Defendants to misuse proprietary information of SSI divulged to the The Lonstein Firm in the Legal Matters pursuant to a fiduciary relationship created by the attorney-client relationship between NSS, SSI and the Lonstein Firm, its attorneys, and its office personnel, were extremely detrimental to SSI, ultimately being financially devastating to SSI's business operations.

a)     Plaintiff demands trial by jury.

## COUNT ONE

### Civil Conspiracy: as to The Lonstein Firm, Wayne Lonstein, Julie Lonstein I, Julie Lonstein II, Herbert Lonstein, Steve Levine, Erin Levine, SAI, April Draganchuk, Martha Dymond, and John and Jane Does

37.　The Plaintiffs re-allege the allegations set forth in Paragraphs one through thirty-six.

38.　As has been set forth herein, The Lonstein Firm, Wayne Lonstein, Julie Lonstein I, Julie Lonstein II, Herbert Lonstein, Erin Levine, SAI, April Draganchuk, Martha Dymond, and John and Jane Does agreed amongst themselves to convert information provided to them, to their employers or principals, or to their spouse, by NSS and SSI. NSS and SSI provided this information to the Defendants as a fiduciary under an attorney-client relationship.　The misuse of NSS' and SSI's proprietary information included, but is not limited to, identifying auditors utilized by NSS and SSI, and deliberately and maliciously diverting the services of these auditors for the benefit of SAI, and using proprietary information divulged by SSI to form, organize, operate, and maintain SAI.

39.　The civil conspiracy committed by all of the Defendants is concomitant to the breach of fiduciary duty and conversion as plead in Counts Two and Eight of this Complaint.

40.　In converting the identity of auditors used by SSI, and then contacting those auditors in order to recruit them to serve SAI rather than SSI, and using proprietary information divulged from the Legal Matters to form, organize, operate, and maintain SAI, the Defendants committed an overt act.

41.    In contacting auditors identified in the Legal Matters and recruiting them to serve SAI, despite the fiduciary (attorney-client) relationship with NSS and SSI, and using proprietary information purloined from the Legal Matters to form, organize, operate, and maintain SAI, the Defendants intentionally participated in the furtherance of a plan or a purpose.

42.    By engaging in a civil conspiracy to expropriate the services of SSI's auditors as identified in the Legal Matters, and using other proprietary information divulged by SSI or NSS as part of the Legal Matters to form, organize, operate, and maintain SAI, the Defendants caused SSI substantial damages. Specifically, SSI was unable to retain the services of its regular auditors to perform future services essential to the business operations of SSI, and the Defendants were able to create a business competitive with SSI using SSI's own proprietary information. These actions by the Defendants caused substantial damages to be incurred by SSI and NSS.

### COUNT TWO

**Breach of Fiduciary Duty: as to The Lonstein Firm,
Wayne Lonstein, Julie Lonstein II, Steve Levine, April
Draganchuk, Martha Dymond and John and Jane Does**

43.    The Plaintiffs reallege the allegations set forth above in paragraphs one through thirty-six.

44.    As legal counsel for SSI and NSS, The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II owed a fiduciary duty to SSI and NSS. As employees and associates of The Lonstein Firm, Steve Levine, April Draganchuk and Martha Dymond, and John and Jane Does (unknown legal associates at the Lonstein Firm), also owed a fiduciary duty to SSI and NSS.

45.    The fiduciary duty owed by the Defendants named in Paragraph 44 was of the highest order, and the duty was well-known to the named Defendants.

46.    By misusing confidential information which NSS and/or SSI and/or had divulged, including business practices of SSI which could be "parroted" by SAI, and identifying auditors used by SSI in approximately 800 hundred Legal Matters and then recruiting those same auditors to be used by SAI instead of SSI, the Defendants named in Paragraph 38 violated their fiduciary duty to SSI and NSS.

47.    Insofar as SAI purloined and diverted the services of SSI's auditors, SSI was unable to retain auditors to perform Auditing Services related to identifying acts of "piracy". As such, SSI suffered substantial damages due to the actions of the Defendants named in Paragraph 44.  In addition, by permitting SAI to copy SSI's proprietary business practices, the Defendants created a competitor to SSI which otherwise could never have existed.

### COUNT THREE

### Unjust Enrichment- as to all Defendants

48.    The Plaintiff realleges the allegations contained in Paragraphs one through thirty-six.

49.    By improperly using SSI's confidential proprietary information, the Defendants gained an advantage they would not have had without using the proprietary information. For example, by identifying and then improperly retaining the auditors used by SSI (those auditors having been identified by the Defendants reviewing records received from SSI and/or NSS pursuant to an attorney-client relationship), the Defendants were able to benefit by SAI using SSI's auditors.

50.    The Defendants were unjustly enriched by their actions of improperly utilizing SSI's auditors, and equity and good conscience mandates that SSI be allowed to recover the ill-gotten enrichment bestowed upon the Defendants. Specifically, the Defendants received money and benefits at the expense of SSI.

51.    The required nexus exists between the Plaintiffs and Defendants, insofar as SSI and NSS retained the Lonstein Firm and its attorneys (including the Defendants Wayne Lonstein and Julie Lonstein II) as legal counsel. Steve Levine, April Draganchuk, Martha Dymond, and John and Jane Does meet the nexus requirement as being employees of both the Lonstein Firm and/or SAI. The nexus requirement as to Julie Lonstein I, Herbert Lonstein, and Erin Levine is satisfied due to these parties' involvement with SAI.

52.    Through the Defendants' unjust enrichment, the Plaintiffs have been damaged.

## COUNT FOUR

### Action For An Accounting against The Lonstein
### Law Firm and Signal Auditing, Incorporated

53.    The Plaintiffs reallege the allegations set forth in paragraphs one through thirty-six.

54.    A fiduciary relationship existed between the Plaintiffs and The Lonstein Firm, its attorneys (including Defendants Wayne Lonstein and Julie Lonstein II), and the office personnel of the Lonstein Firm.

55.    The Lonstein Firm received approximately 800 files part of the Legal Matters. In the case of SSI, Legal Matters were received by the Lonstein Firm pursuant to two separate circumstances.  First, some of the Legal Matters were received due to SSI's representation of its Licensor-clients (such as NSS), in order that claims of the Licensor-

clients arising under the Act could be initiated by the Lonstein Firm filing civil complaints ("Category I Claims"). Second, some of the Legal Matters were received pursuant to SSI's status as the assignee of certain claims originally belonging to "EJJ","GCB", or "TR", but subsequently assigned to SSI ("Category II Claims"). As previously set forth herein, whether the Legal Matters concerned Category I Claims or Category II Claims, The Lonstein Firm, Wayne Lonstein and Julie Lonstein II knew that SSI held a legal, equitable, and financial interest in the lawsuits filed by the Lonstein Firm due to SSI benefitting financially from the resolution of the suits when monies were collected by, e.g., settlement, collection actions following a judgment, etc.

56.     Upon information and belief, in no instance in which the Lonstein Firm settled a case which was one of the Legal Matters, did the Lonstein Firm provide a final settlement statement in compliance with, e.g., the New York Lawyer's Code of Professional Responsibility. That is, in none of the approximately 800 Legal Matters did the Lonstein Firm disclose the amount of the settlement, the amount of expenses, including but not limited to attorney's fees, and the amount due to the plaintiff.

57.     It is relevant for this Court to be apprised that NSS and That's Entertainment, Inc. ("TEI"), another Licensor, initiated a complaint in the Circuit Court for Palm Beach County, Florida against Alan Gelb (the Lonstein Firm's, Wayne Lonstein's, and Julie Lonstein II's legal partner in prosecuting Piracy actions) and his law firm (collectively, the "Gelb Offices"). The case number assigned to the Florida matter was Civil Action No.: 05 CA 004161MB (the "Florida Suit").

58.     In the Florida Suit, NSS and TEI made allegations against the Gelb Offices concerning the handling of legal matters that are substantially identical in nature to the

Legal Matters forwarded to the Lonstein Firm in the instant matter.  That is, NSS and TEI forwarded to The Gelb Offices cases which were to be prosecuted against Pirates under the Federal Communications Act.

59.     In the Florida Suit, the Lonstein Firm, Wayne Lonstein, and Julie Lonstein II were partners with The Gelb Offices in the handling of the cases at issue in the Florida Suit. The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II,  were originally named as defendants in the Florida Suit, but were eventually voluntarily dismissed as defendants by the plaintiffs for economic and tactical reasons.

60.     In the Florida Suit, one of the causes of action asserted against the Gelb Offices was an action for an Accounting. After the Lonstein Firm, Wayne Lonstein, and Julie Lonstein II were dismissed as defendants in the Florida Suit, NSS was granted summary judgment against the Gelb Offices on the Accounting claim. Following an independent accounting of the Gelb Offices' records, the Florida Suit was quickly settled.

61.     In the instant matter, the Lonstein Firm, Wayne Lonstein,  Julie Lonstein II and the Gelb Offices acted as partners in representation in the Legal Matters received by the Lonstein Firm. Upon information and belief, the Gelb Offices and The Lonstein Firm also acted in concert  in the handling of monies-including but not limited to settlement proceeds, related to the Legal Matters at issue in the instant matter.

62.     The Plaintiffs respectfully suggest that the decision of the Court in the Florida Suit to grant the imposition of an Accounting in legal matters, some of which are identical to those in the case at bar, indicates that the imposition of an Accounting as to the Lonstein Firm is necessary and  appropriate.

63.    The Plaintiff is further entitled to an Equitable Accounting from SAI regarding all of the Auditing Services performed by SAI, in order to identify auditors whose services were purloined from SSI, as well as all commercial establishments identified as Pirates by SAI, any settlements procured by SAI, and the forms and business practices implemented utilized by SAI.

64.    In addition, while it is arguable that no specific fiduciary relationship existed between SAI and SSI, an Accounting is available under New York law where special circumstances warrant equitable relief in the interests of justice. In the case at bar, SAI should clearly provide an Accounting, at the very least  with regard to monies received due to auditors who were improperly purloined from SSI, as well as production regarding its business forms and practices.

65.    In the instant matter, accountings should be provided to SSI and NSS from both the Lonstein Firm and SAI.

### COUNT FIVE

### Fraud in the Inducement as to The Lonstein
### Firm, Wayne Lonstein, and Julie Lonstein II

66.    The Plaintiffs reallege the allegations contained in Paragraphs one through thirty -six.

67.    In aggressively marketing and offering legal services to NSS and SSI, The Lonstein Firm, Wayne Lonstein and Julie Lonstein II made specific representations of material facts that they would provide legal services of the highest caliber, and entered into a fiduciary relationship based on trust and fair play.

68.     The Defendants identified in paragraph 67 misused proprietary information and other business materials received by them from NSS and SSI pursuant to a fiduciary (attorney-client) relationship. For example, these Defendants reviewed materials in the Legal Matters to identify auditors, and then assisted in retaining those auditors for SAI, or provided the information to others who retained the auditors for SAI. Similarly, The Lonstein Firm, Wayne Lonstein and Julie Lonstein II procured confidential information on SSI's business forms and business techniques, and then provided or assisted in providing those forms and techniques to SAI. These Defendants' made false representations to NSS and SSI as to acting in a fiduciary capacity, and establishing a relationship based on trust and fair play, in order to induce the Plaintiffs to divulge confidential proprietary materials.

69.     When The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II made their representations to NSS and SSI, they knew they would analyze the materials provided to them by NSS and SSI in order to identify and hire SSI's auditors, as well as to use SSI's confidential business information, forms, and techniques for the benefit of SAI. Therefore, these Defendants knew their representations were false when they were made.

70.     In retaining the services of The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II, the Plaintiffs justifiably relied on representations made by these Defendants that they were experts in their field of law, and would engage in a relationship with NSS and SSI of the very highest character, based on trust.

71.     Due to the Plaintiffs' reliance on the representations of The Lonstein Firm, Wayne Lonstein, and Julie Lonstein II, SSI discovered that SAI hired away its auditors,

and modeled its business operations pursuant to the proprietary information divulged by SSI and/or NSS.  This resulted in devastating economic damages being incurred by the Plaintiffs.

## COUNT SIX

### Aiding and Abetting Fraud- by Steve Levine, Signal Auditing, Inc., April Draganchuk, Martha Dymond, Julie Lonstein I, <u>Herbert Lonstein, Erin Levine, and John and Jane Does</u>

72.    The Plaintiffs reallege the allegations set forth in Paragraphs one through thirty-six.

73.    The Defendants Steve Levine, SAI, April Draganchuk, Martha Dymond, Julie Lonstein I, Herbert Lonstein, Erin Levine, and  John and Jane Does all knew of the existence of the fraud which has been set forth in Count Five of this Complaint.

74.    The Defendants Steve Levine, SAI, April Draganchuk, Martha Dymond, Herbert Lonstein, Erin Levine, and John and Jane Does all had knowledge that auditors identified from the Legal Matters were being hired to act as  auditors for SAI, and that confidential and proprietary business materials emanating from SSI were being utilized to organize and operate SAI.

75.    The Defendants Steve Levine, SAI, April Draganchuk, Martha Dymond, Erin Levine, Herbert Lonstein, and John and Jane Does all provided substantial assistance to advance the commission of the fraud set forth in Count Five of this Complaint. These Defendants consciously shared in the wrongdoing constituting the fraud committed upon NSS and SSI.

76.    Due to these Defendants aiding and abetting in the commission of the fraud, NSS and SSI has suffered devastating economic damages.

## COUNT SEVEN

### Tortious Interference With Business Relations as to-The Lonstein Firm, Wayne Lonstein, Julie Lonstein I, Steve Levine, Julie Lonstein II, April Dragachuk, Martha Dymond, Erin Levine, Herbert Lonstein, and John and Jane Does

77.    The Plaintiffs reallege the allegations set forth in Paragraph one through thirty-six.

78.    As has been set forth herein, NSS and SSI caused The Lonstein Firm, its principals, attorneys, and employees to receive approximately 800 files in order that the Lonstein Firm could initiate civil actions in various federal district courts throughout the United States.

79.    Each of the Legal Matters received by the Lonstein Firm had a copy of an auditor's affidavit and/or check list which had been completed by an auditor who had an ongoing business relationship with SSI. In addition, as part of the attorney-client relationship with The Lonstein Firm, Wayne Lonstein and Julie Lonstein II, NSS and SSI provided a myriad of confidential and proprietary business information- basically opening up the entire scope of SSI's business operations to The Lonstein Firm, its principals, attorneys and employees.

80.    When The Lonstein Firm received the Legal Matters containing the information on the auditors, the Lonstein Firm, its principals, attorneys, and employees knew that SSI had a business relationship with the auditors identified in the materials being turned over to the Lonstein Firm.

81.    Despite knowing that SSI had ongoing business relationship with the auditors, the Lonstein Firm, Wayne Lonstein, Julie Lonstein II, Steve Levine, SAI, April Draganchuk, Martha Dymond and John and Jane Does all deliberately, knowingly, and

with malicious intent contacted the auditors and induced said auditors to utilize their services for SAI, rather than for SSI.

82.    The Defendants Julie Lonstein I, Erin Levine and Herbert Lonstein were aware of the actions described in Paragraph 81, and pursuant to their interests in SAI, ratified the actions as described in Paragraph 81.

83.    In many cases, the Defendants named in Paragraph 81 were successful in inducing auditors to work for SAI, rather than for SSI. Those auditors' services were lost, forever, to SSI.

84.    The actions of the Defendants named in Paragraphs 81 and 82  damaged severely damaged the business operations of SSI.

85.    In addition, the Defendants named in paragraph 81 utilized the proprietary information contained with the Legal Matters to organize and operate SAI, which was intended to be a competitor to SSI. The Defendants Julie Lonstein I, Erin Levine and Herbert Lonstein were aware of the actions described herein, and pursuant to their interests in SAI, ratified these actions.

## COUNT EIGHT

### Conversion as to The Lonstein Firm, Wayne Lonstein and Julie Lonstein II

86.    The Plaintiffs reallege the allegations set forth in paragraphs one- thirty six.

87.    Pursuant to their actions as legal counsel for NSS and SSI in the Legal Matters, the Defendants The Lonstein Firm, Wayne Lonstein and Julie Lonstein II collected monies due to settlements, post-judgment collection proceedings, and other legal procedures.

88.    Of the monies collected by these Defendants, The Lonstein Firm was to recover any costs it accrued or advanced (e.g., service fees, filing fees, etc.), and remit to the Lonstein Firm its agreed upon attorney's fee. These fees and costs, along with remaining monies representing amounts due to clients, were to be accounted for in a manner in compliance  (a settlement statement) required under the rules governing the practice of law in New York.

89.    Upon information and belief, the Defendants The Lonstein Firm, Wayne Lonstein and Julie Lonstein II unlawfully converted certain monies to their possession, even though the amounts were not due and owing to the Lonstein Firm.

90.    The conversion of the funds by the Lonstein Firm, Wayne Lonstein and Julie Lonstein II has damaged the Plaintiffs.

WHEREFORE, the Plaintiff seeks the following relief:

A.    Compensatory damages in the amount of not less than Two Million and 00/100 ($2,000,000) Dollars;

B.    Taxable Costs;

C.    Pre-judgment interest and post-judgment interest;

D.    For such other further relief as is just and proper.

DATED: March 7, 2008
       Albany, New York

BY: _____
James M. Reilly, Esq.
Bar # 102425
Herzog Law Firm, P.C.
7 Southwoods Boulevard
Albany, NY 12211
Telephone: (561) 518) 465-7581
Facsimile: (518) 462-2743